The State of CALIFORNIA ex rel., The CALIFORNIA COASTAL COMMISSION; Gray Davis, Governor of California; and Bill Lockyer, Attorney General of the State of California, et al., Plaintiffs,

v.

Gale A. NORTON, Secretary of the Interior; United States Department of Interior, Minerals Management Service, Regional Supervisor of the Minerals Management Service, et al., Defendants.

No. C 99–4964 CW.

United States District Court, N.D. California.

June 20, 2001.

ORDER GRANTING PLAINTIFFS' MO-
TION FOR SUMMARY JUDG-
MENT AND DENYING DEFEN-
DANTS' CROSS–MOTION FOR
SUMMARY JUDGMENT

WILKEN, District Judge.

The central dispute in this case is whether Defendant Mineral Management Service (MMS) must make, and provide to Plaintiff California Coastal Commission (CCC), a determination that the MMS's grant of suspensions of certain oil and gas leases on the Outer Continental Shelf (OCS) off the coast of California is consis-

tent with the State of California Coastal Management Program (CCMP). The Court finds that the MMS must do so. Also at issue is whether the MMS complied with the requirements of the National Environmental Policy Act (NEPA), 28 U.S.C. § 2201 *et seq.* in granting the lease suspensions.

Plaintiffs State of California, the CCC, Gray Davis, Governor of California, and Bill Lockyer, Attorney General of California, move for summary judgment that MMS did not comply with the Coastal Zone Management Act (CZMA) when it granted the requests of the lessees for suspension of the thirty-six leases at issue here without determining that the suspensions were consistent with the CCMP and providing the CCC the opportunity to review that determination. Plaintiffs also move for summary judgment that MMS did not comply with the requirements of NEPA when it granted the suspension requests. Defendants Gale A. Norton, Secretary of the Interior, the Department of the Interior, the MMS, and the Regional Supervisor of MMS oppose this motion and cross-move for summary judgment that Defendants' grant of the suspensions of these leases complies with the CZMA. Defendants also cross-move for summary judgment that they have complied with all of the requirements of NEPA. Defendant Operator Intervenors [1] also move for summary judgment that the MMS has complied with all of the requirements of the CZMA and NEPA. Some Plaintiff Intervenors [2] filed briefs in support of Plaintiffs' motion for summary judgment. Plaintiffs also filed, without opposition, a request for judicial notice of the Federal Register, vol-

ume 65, number 226 from pages 70361 to 70362. The matter was heard on December 1, 2000. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS Plaintiffs' Motion for Summary Judgment (Docket # 82) and Request for Judicial Notice (Docket # 97) and DENIES Defendants' Cross–Motion for Summary Judgment (Docket # 88) and Defendant Operator Intervenors' Motion for Summary Judgment (Docket # 85).

## BACKGROUND

### I. Leases Governed By the Outer Continental Shelf Lands Act

Oil and gas leases on the Outer Continental Shelf (OCS) are governed by the Outer Continental Shelf Lands Act (OSCLA), 43 U.S.C. § 1331 *et seq.*, enacted in 1953. Pursuant to the OSCLA, the Department of the Interior may issue and administer leases for exploration for and production of oil and gas on the Outer Continental Shelf (OCS). *See* 43 U.S.C. § 1331 *et seq.; see also* 30 C.F.R. part 250 *et seq.* (regulations implementing the OSCLA). These leases may have a primary term of five to ten years, and may continue after the primary term for as long as there is production of oil or gas in paying quantities, approved drilling or well reworking operations. *See* 43 U.S.C. § 1337(b)(2).

The OSCLA prescribes a four stage process for the development of oil and gas leases for exploration and production. The first stage is the development and publication of schedules of proposed sales of leases. *See* 43 U.S.C. § 1337; 30

---

1. The Operator Intervenors are AERA Energy, LLC., CONOCO, Inc., Nuevo Energy Company, Poseidon Petroleum, LLC, Samedan Oil Company.

2. Plaintiff Intervenors are County of Santa Barbara, County of San Luis Obispo, Sierra Club, League For Coastal Protection, Natural Resources Defense Council, Friends of the Sea Otter, CALPIRG, California CoastKeeper, Santa Barbara Channelkeeper, Santa Monica Baykeeper, Get Oil Out and Citizens Planning Association.

C.F.R. part 256, subpart F (Lease Sales). The second stage is the sale of the leases. *See* 43 U.S.C. § 1337(a)(1); 30 C.F.R. part 256, subpart G (Issuance of Leases).

The third stage is the filing and review of the exploration plan (EP). *See* 43 U.S.C. § 1340; 30 C.F.R. § 250.203. At this stage, the lessee submits a proposed EP to the Regional Supervisor of the MMS for approval. The plan must include a description of the exploration activities, a description of the mobile drilling unit, a map of the proposed wells, and either a certificate of a consistency determination by the federal agency or a consistency certification by the State. *See* 43 U.S.C. § 1340(c); 30 C.F.R. § 250.203. The Regional Supervisor of the MMS must consult with the Governor of the affected State, or the Governor's designated representatives, and the Office of Ocean and Coastal Resource Management of the National Oceanic Atmospheric Administration before approving or disapproving the proposed EP. *See* 30 C.F.R. § 250.203. After the EP has been approved by the Regional Supervisor, any revisions to it must be submitted to the Regional Supervisor for approval. *See* 30 C.F.R. § 250.203(n). If the Regional Supervisor determines that "a proposed revision could result in a significant change in the impacts previously identified and evaluated," 30 C.F.R. § 250.203(n)(2), the revisions are subject to the same approval process as the original EP. *See* 43 U.S.C. § 1340(e)(1).

Finally, the fourth stage is the filing and review of a development and production plan (DPP). *See* 43 U.S.C. § 1351; 5 C .F.R. § 250.204. The DPP must be submitted along with the lessee's certification that each activity is consistent with the State's coastal management program. *See* 43 U.S.C. § 1351(d); 30 C.F.R. § 250.204(b)(13). Development and production activities may be carried out only in accordance with the approved DPP. *See* 43 U.S.C. § 1351(b).

Pursuant to the OSCLA, 43 U.S.C. § 1334(a)(1), the MMS has the authority to grant suspensions of the primary term, or of an extended term, of the lease upon request of the lessee for reasons such as facilitating the development of the lease or making arrangements for transportation facilities. The MMS may also direct suspensions of the leases on its own initiative, for example, in the face of a threat of serious, irreparable, or immediate environmental harm. *See* 43 U.S.C. §§ 1337(b)(5); *see also* 30 C.F.R. §§ 250.168–180.

What is referred to as a suspension of the lease is actually a suspension of the running of the term of the lease, that is, in effect an extension of the lease.

## II. The Leases At Issue

Between 1968 and 1984, the MMS, a division of the Department of the Interior, conducted four sales of oil and gas leases for the OCS off the coast of California, which resulted in forty leases being issued, each with a primary term of five years. Until October, 1992, the MMS, at the request of the lessees, had granted suspension of the leases, extending all of the primary terms of the leases. On October 15, 1992, MMS directed suspensions of the leases commencing on January 1, 1993. In May, 1999, when the directed suspensions were about to end, each of the lessees filed a request for a lease suspension. In May and June, 1999, a number of elected officials of the State of California wrote letters to the Department of the Interior opposing the lessees' pending requests for lease suspensions, and asking the MMS to postpone its decision on those requests until the CCC made a determination about its own authority, under the CZMA, to review the pending lease suspensions for consistency with the State's CCMP.

On June 25, 1999, independent of these letters from the State's elected officials, MMS directed additional suspensions of all forty of the leases until August 16, 1999, in order to have additional time to review the lessees' suspension proposals. *See* 3 Administrative Record (AR) 719–744.

The CZMA, 16 U.S.C. § 1451 *et seq.*, had been enacted in 1972. In it, Congress declared a national policy which "has as its main purpose the encouragement and assistance of States in preparing and implementing management programs to preserve, protect, develop and whenever possible restore the resources of the coastal zone of the United States." S.Rep. No. 92–753 (1972), reprinted in 1972 U.S.C.C.A.N., 92nd Congress, Volume 3, at 4776. The CZMA encourages the States' development of coastal zone management programs and cooperation between the federal and State agencies engaged in programs affecting the coastal zone. *See Exxon Corporation v. Fischer*, 807 F.2d 842, 844 (9th Cir.1987) (explaining that the CZMA is "a mechanism for resolving conflicts between state coastal zone plans and federally approved activities"). The legislative history of the CZMA states, "There is no attempt to diminish state authority through federal preemption. The intent of this legislation is to enhance state authority by encouraging and assisting the states to assume planning and regulatory powers over their coastal zone." S.Rep. No. 92–753 (1972), reprinted in 1972 U.S.C.C.A.N., 92nd Congress, Volume 3, at 4776.

Since 1972, then, the CZMA has required that certain federal agency activities, and certain private activities done under the authority of a federal license or permit, that affect the coastal zone, be consistent with the State's coastal management program. *See* 16 U.S.C. § 1456(c). A federal agency carrying out an activity that affects the coastal zone must provide a consistency determination to the relevant State agency before final approval of the federal activity. *See* 16 U.S.C. § 1456(c)(1)(C). Any applicant for a required federal license or permit to conduct an activity, within or outside of the coastal zone, that affects any land or water use or natural resource of the coastal zone is required to furnish a certificate that its proposed activity is consistent with the State's coastal management program. *See* 16 U.S.C. § 1456(c)(3)(A). Title 15 C.F.R. part 930 *et seq.*, enacted pursuant to the CZMA, "describes the obligations of all agencies, individuals and other parties who are required to comply with the Federal consistency provisions of the Coastal Zone Management Act."

On July 27, 1999, the CCC advised the MMS that, pursuant to the CZMA, 16 U.S.C. § 1456(c)(3), it was asserting its authority to review the requests for suspension of the leases for consistency with the State's coastal management plan. *See* 3 AR 745. The CCC set out a number of issues about which it was concerned, including the age of the leases, the poor quality of the oil, the proximity of the leases to marine sanctuaries, and changed environmental circumstances, such as the expansion of the territory of the threatened southern sea otter into the area. *See* 3 AR 745–47. The CCC also advised the MMS that the lessees were to provide the State with a certification of consistency and the MMS could not approve the requested suspensions unless the State concurred with the consistency certification. The CCC indicated that, therefore, the MMS should hold the lessees' requested suspensions in abeyance.

On August 13, 1999, former Secretary of the Interior Bruce Babbitt, responding to the CCC, indicated that the lessees' suspension requests did not trigger California's consistency review authority because

the requested suspensions did not have any effect on California's coastal zone. *See* 3 AR 756–57.

On the same day, the MMS directed suspension of thirty-six of the forty leases for ninety days, in order to ensure that the lease development work complied with the CZMA.[3] *See id.*

On November 12, 1999, the MMS granted the lessees' requests for suspensions of the thirty-six leases at issue here, suspending the leases for nineteen to forty-five months. *See* 5 AR 0956. The MMS required that each lessee undertake certain "milestone" activities, including drilling a well, submitting a description of the proposed project, and submitting a revised EP or DPP, in order to continue the suspension.

## DISCUSSION

### I. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

A motion for summary judgment may properly be brought in litigation challenging decisions and actions of federal agencies under the Administrative Procedure Act. *See Muckleshoot Indian Tribe v. U.S. Forest Service,* 177 F.3d 800 (9th Cir. 1999); *see also* 5 U.S.C. §§ 702–706. In deciding such a motion for summary judgment, the Court reviews the record of the federal agency and determines whether the agency's decision was based on a consideration of the relevant factors or whether its actions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *See Blue Mountains Biodiversity Project v. Blackwood,* 161 F.3d 1208 (9th Cir.1998). However, questions of law are reviewed de novo by the Court. *See Wagner v. National Transp. Safety Bd.,* 86 F.3d 928, 930 (9th Cir.1996).

### II. Coastal Zone Management Act

#### A. Federal Activity

▇ As noted above, the CZMA requires federal agencies conducting activities that affect the coastal zone to determine that these activities are consistent with the State's coastal management program. *See* 16 U.S.C. § 1456(c). Plaintiffs claim that the MMS's grant of a request to suspend an oil or gas lease is a "federal activity" which affects the coastal zone as defined by the CZMA and requires the MMS to give the State a consistency determination.

Between 1972 and 1984, it was not clear whether consistency review was required for the sale of leases on the OCS off the coast of California. In *Secretary of the Interior v. California,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984), the Supreme Court considered whether the sale of gas and oil leases for the OCS was a federal activity "directly affecting" the coastal zone, which would require a determination by the Secretary of the Interior that the lease sale was consistent with the State's coastal management plan. *Id.* The Court concluded that Congress did not intend the CZMA to apply to activities on the OCS. *See id.* at 325–330, 104 S.Ct. 656.

---

**3.** The MMS determined that the remaining four leases had expired and, therefore, did not qualify for further lease suspensions. The lessees of these four leases have administratively appealed the MMS's decision to deny their requests for suspension.

The Court held that "the Secretary of the Interior's sale of outer continental shelf oil and gas leases is not an activity 'directly affecting' the coastal zone within the meaning of this statute." *Id.* at 315, 104 S.Ct. 656. The Court noted that a lease sale is one in a series of events that may culminate in activities which directly affect the coastal zone. *See id.* at 321, 104 S.Ct. 656.

The Court also found that CZMA § 1456(c)(1) referring to activities "conducted or supported by a federal agency" is not applicable to lease sales on the OCS. *Id.* at 330, 104 S.Ct. 656. The Court reasoned that the federal agency does not conduct or support the activities of drilling for oil or gas under the lease. *Id.* at 332, 104 S.Ct. 656.

In 1990, Congress amended the CZMA to overrule *Secretary of the Interior. See* H.R.Rep. No. 101–964 reprinted at 1990 USCCAN 2374, 2675. Section 1456(c)(1)(A) was amended to delete the word "directly" modifying "affects," so that the statute now reads,

> Each Federal agency activity within or outside the coastal zone that affects any land or water use or natural resources of the coastal zone shall be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved State management programs.

16 U.S.C. § 1456(c)(1)(A). Furthermore, Congress indicated in the legislative history that "the term 'affects' is to be construed broadly, including direct effects which are caused by the activity and occur at the same time and place, and indirect effects which may be caused by the activity and are later in time or farther removed in distance but are still reasonably foresee-

able." H.R.Rep. No. 101–964, 1990 USCCAN at 2675.

Congress also indicated in the legislative history that this amendment was intended "to make clear" that the sale of oil and gas leases is subject to the CZMA. *Id.* at 2676. By requiring the lease sale itself to be consistent with the State's coastal management program, Congress advanced the time for consistency review of a federal activity to an earlier stage than that of the development of the EP and the DPP. *See id.* The legislative history states that the amendments should "leave no doubt that all federal agency activities and all federal permits are subject to the CZMA's consistency requirements." *Id.*

All of the parties agree that since the 1990 amendment of the CZMA, sales of leases for the exploration and development of oil or gas on the OCS are federal agency activities that require consistency determinations.

Plaintiffs argue that the MMS's grants of suspensions of the leases are likewise federal activities that affect the coastal zone, which requires the MMS to give the State a determination that these suspensions are consistent with the CCMP.[4] Plaintiffs assert that, just as a sale of oil and gas leases on the OCS is reviewable as a federal activity affecting the coastal zone under the CZMA as amended, the grant of suspension of the leases, which substantially extends the primary term of the leases, is also reviewable as a federal activity affecting the coastal zone.

In further support of their argument, Plaintiffs point out that the grant of these suspensions requires certain activities, which are referred to as "milestones." These milestones include the spudding

---

4. Defendants assert that Plaintiffs did not allege in their complaint that the grants of the lease suspensions are violations of the CZMA, 16 U.S.C. § 1456(c)(1). The Court finds suffi-

cient Plaintiffs' allegations that "Defendants have approved the requests for suspensions without complying with the Coastal Act, the CCMP, and the CZMA." *See* Complaint at 8.

(drilling) of exploration and delineation wells which directly affect the coastal zone.

Defendants argue that the grant of a lease suspension is not a federal activity, as defined by the CZMA, and, therefore, the MMS is not required to give the State a consistency determination. Defendants also respond that the grant of the suspensions of the leases does not authorize any activity that could affect California's coastal zone and, therefore, the MMS is not required to determine that these suspensions are consistent with the State's coastal management program. Defendants assert that before any milestone, including the spudding of new wells, the construction of new offshore platforms and onshore facilities, oil transportation by tanker, and exploration, is authorized, each lessee must file a new or revised EP or DPP early in the lease suspension period. Pursuant to the CZMA, if a lessee files a new EP or DPP, those plans must be consistent with the CCMP. Further, Defendants state that if the lessee files a revised EP or DPP, the MMS will determine whether the revisions involve significant changes in environmental impacts from the impacts evaluated when the original EP or DPP was filed. If the MMS finds that the revisions do involve significant changes in environmental impacts, the revisions must be determined to be consistent with the CCMP before they can be approved. *See* 43 U.S.C. § 1340(e)(1); 30 C.F.R. § 250.203(n)(2). Therefore, Defendants argue that merely granting the suspensions does not authorize any activities or affect the coastal zone and thus that Plaintiffs' arguments are premature.

The Court finds that the MMS's grant of these suspensions is a federal activity, as defined by the CZMA in 16 U.S.C. § 1456(c)(1). Title 15 C.F.R. § 930.31, enacted pursuant to the CZMA, defines "federal activity" as "any functions performed by or on behalf of a Federal agency in the exercise of its statutory responsibilities." The MMS's grant of the suspensions is a federal activity which it carries out in the exercise of its statutory duties.

As noted above, Congress, in the 1990 amendments to the CZMA, advanced the time for review of oil and gas leases for consistency with a State's coastal management program to the time of the sale of the leases. These leases were not subject to consistency review when they were sold because that occurred prior to the clarifying amendments to the CZMA. These lease suspensions extend the primary term of the leases, which would have otherwise expired. At the time these suspensions were granted, the leases were fifteen to thirty years old, although they were entered into as five year leases. The suspensions allowed the leases to continue for lengthy additional terms, from one and half to four additional years. Because oil and gas leases must now be found to be consistent with the State's coastal management program at the time they are sold, the Court finds that the granting of these lengthy lease suspensions, long after the leases were sold and would otherwise have expired, must likewise be subject to a consistency determination as a federal activity affecting the coastal zone, as defined by the CZMA.

The Court's finding is bolstered by the fact that the lessees must engage in certain milestone activities, including the spudding of delineation and exploratory wells, in order to continue the suspensions. Thus, by approving the suspensions, the MMS requires the lessees to engage in activities that directly affect the coastal zone.

Defendants' claim that the future review of the EPs or DPPs that will be submitted for the milestone activities obviates the need to review the lease suspensions for consistency is not well taken. The CZMA,

as amended, requires consistency review of leases when they are sold and requires review again later when the EPs and DPPs are submitted. *See* 16 U.S.C. §§ 1456(c)(1), (c)(3)(A) and (c)(3)(B). Thus, under the CZMA, as amended, the later review of the EPs or DPPs for consistency with the CCMP does not obviate the MMS's responsibility to provide the State with a consistency determination at the earlier stage when the lease is sold. Neither does it obviate the need for a consistency determination of the suspension of these leases, which were not reviewed for consistency with the CCMP at the time of their sale.

Furthermore, there is no assurance that if the lessees submit revised, rather than new, EPs and DPPs, those revised plans will be subject to consistency certification. The CZMA does not require all revisions to EPs or DPPs to be subject to consistency certification but rather allows the MMS to decide whether such revisions should be subject to a consistency certification. *See* 30 C.F.R. §§ 250.203(n)(2) and 250.204(q)(2); *see also* 16 U.S.C. § 1456(c)(3)(B); 30 C.F.R. §§ 250.203(b)(18) and 250.204(b)(13).

Therefore, because of Congress's intent to require a federal agency to give the State consistency determinations at the time of the sale of leases, which did not occur in this case, and because the MMS's grant of these suspensions requires activities that affect the coastal zone, the Court finds that the MMS must provide the State with a determination that the lease suspensions are consistent with the State's coastal management program, pursuant to CZMA § 1456(c)(1).

■ Defendants argue that even if granting lease suspensions is a federal activity as defined by the CZMA, 16 U.S.C. § 1456(c)(1), MMS has already complied by sending a *de facto* negative determination in its August 13, 1993 letter to the CCC from former Secretary of Interior Babbitt.

Title 15 C.F.R. § 930.35(d) indicates that if a federal agency makes a "negative determination," it need not do a consistency determination or allow consistency review. In a "negative determination," the federal agency notifies the State agency that it has determined that the federal activity does not require consistency determination and briefly states the reasons for its conclusions. *See* 15 C.F.R. § 930.35(d).

The August 13, 1999 letter was not a negative determination as defined by 15 C.F.R. § 930.35(d). The letter did publish the MMS's findings that the granted lease suspensions "will not provide the lessees with any authority to conduct any activities that have the potential to affect the land or water use or natural resources of the State's coastal zone." *See* 5 AR 0865 (August 13, 1999 Letter). However, the letter indicates that the MMS directed suspensions of the leases in order to "maximize" the missions of the State and authorities to have

> a full opportunity to evaluate the appropriateness of developing the leases under the full panoply of Federal and State laws, including but not limited to the Coastal Zone Management Act, the Clean Water Act, the Clean Air Act, and the Commission's extensive regulations.

5 AR 864 (August 13, 1999 letter). Thus, the letter was merely notice to the State authorities that the MMS was gathering information about whether the passage of time and changed circumstances might require that the leases be evaluated under a number of statutes, including the CZMA.

**B. Private Activities Requiring A Federal License or Permit**

Notwithstanding whether the MMS's grant of the lease suspensions is a federal activity requiring consistency determina-

tion under 16 U .S.C. § 1456(c)(1), Plaintiffs argue that the grant of the lease suspensions is a federal license or permit for private activities that affect the coastal zone, as defined by § 1456(c)(3)(A), which require consistency certification. Because the Court has found that the MMS's grant of these suspensions is a federal activity covered by CZMA § 1456(c)(1), the Court will not address whether the MMS's grant of the lease suspensions is a federal license or permit for private activities that affect the coastal zone.[5]

### III. National Environmental Policy Act

■■■ The National Environmental Policy Act (NEPA), 42 U.S.C. § 4331, et seq., requires federal agencies to consider the environmental consequences of their actions. *Metcalf v. Daley*, 214 F.3d 1135, 1141 (9th Cir.2000) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 348, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)). NEPA provides that federal agencies are to identify and develop methods for implementing NEPA in consultation with the Council on Environmental Quality (CEQ). *See* 42 U.S.C. § 4332(B); *see also*, 40 C.F.R. part 1500 *et seq.* Title 40 C.F.R. part 1500 *et seq.*, enacted pursuant to NEPA, are the "action-forcing provisions to make sure that the federal agencies act according to the Act." 40 C.F.R. § 1500.1(a).

■■■ NEPA requires federal agencies to prepare an environmental impact statement (EIS) for any action that will significantly affect the environment. *See* 42 U.S.C. § 4332(C). In determining whether an action will significantly affect the environment, factors that should be considered are "(1) the degree to which the proposed action affects public health or safety, (2) the degree to which the effects

will be highly controversial, (3) whether the action establishes a precedent for further action with significant effects, and (4) whether the action is related to other action which has individually insignificant, but cumulatively significant impacts." *Alaska Center for the Environment v. United States Forest Service*, 189 F.3d 851, 859 (9th Cir.1999); *see also* 40 C.F.R. § 1508.27(b).

Pursuant to 40 C.F.R. § 1508.9, when determining whether to prepare an EIS, a federal agency may prepare an Environmental Assessment (EA) in order to "provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement (EIS) or finding of no significant impact." Pursuant to 40 C.F.R. § 1508.13, if the agency finds that the proposed action would have no significant impact on the environment, the agency may prepare a finding of no significant impact (FONSI). When neither an EIS nor EA have been conducted, the agency "must supply a convincing statement of reasons why potential effects are insignificant." *Alaska Center for Environment*, 189 F.3d at 858.

Pursuant to 40 C.F.R. § 1508.4, an agency may define categorical exclusions from the requirement of preparing an EA or an EIS. *See* 40 C.F.R. § 1508.4; *see also* 40 C.F.R. § 1500.4(p). Actions may be categorically excluded if they "do not individually or cumulatively have a significant effect on the human environment." *See id.; see also Alaska Center for the Environment*, 189 F.3d at 859. An agency adopting categorical exclusions must provide for exceptions for extraordinary circumstances in which a normally excluded action may have a significant environmental effect that would require assessment

---

**5.** The Court likewise does not rule on the applicability of the amended CZMA regulations, which are effective as of January 8, 2001, because these amendments relate to § 1456(c)(3).

under NEPA. *See* 40 C.F.R. § 1508.4; *Alaska Center for the Environment,* 189 F.3d at 859; *Jones v. Gordon,* 792 F.2d 821, 827 (9th Cir.1986).

The MMS's exceptions for extraordinary circumstances to actions listed as categorically excluded are actions which may "(1) have 'significant effects on public health or safety,' (2) have an adverse effect on 'unique geographical characteristics,' (3) have 'highly controversial effects on the environment,' (4) have 'highly uncertain effects on the environment,' (5) establish a 'precedent for future action with significant effects on the environment,' (6) be related to actions that cumulatively have a significant effect on the environment, (7) have 'adverse effects on species listed or proposed to be listed on the List of Endangered or Threatened Species or have adverse effects on designated Critical Habitat for these species,' or (8) 'threaten to violate a Federal, State, local or tribal law or requirement imposed for the protection of the environment.'" 49 Fed.Reg. 21437, 21439.

Plaintiffs acknowledge that the MMS has categorically excluded the grant of suspensions of leases from NEPA. *See* Pl.s' Motion for Summary Judgment at 22; *see also* Environmental Intervenors' Brief for Summary Judgment, Ex. 1 (DOI Departmental Manual 516, Appendix 10 § 10.4(C)(6)). Nonetheless, Plaintiffs argue that the MMS's reliance on a categorical exclusion in granting the suspensions was in error because it failed to provide explanatory findings to support its reliance on the categorical exclusion or to support the inapplicability of the extraordinary circumstances exceptions to the categorical exclusions.

Plaintiffs also argue that circumstances of this case bring it within the MMS's extraordinary circumstances exceptions to the categorical exclusions. In particular, Plaintiffs assert that these suspensions have highly uncertain, highly controversial and potentially significant environmental effects as evidenced in the administrative record. These environmental effects include adverse impacts on the threatened sea otter, whose territory has expanded in the direction of the leases, on two marine sanctuaries which are ecologically significant, and on hard bottom habitat, water quality, undersea noise and air quality, and cumulative impacts. Plaintiffs also appear to argue that the MMS has acknowledged that circumstances have changed since the approval of the leases and, therefore, the MMS should have conducted an EA or EIS prior to granting the lessees' requests for suspensions. However, Plaintiffs provide no citation of authority in support of this argument.

Defendants counter that NEPA does not require the MMS to explain its reliance on the categorical exclusions it has defined. Defendants assert that Plaintiffs should have challenged the categorical exclusion at the time it was defined. Defendants also assert that requiring the MMS to document its reasons for categorical exclusions would create unnecessary paperwork and negate the purpose of categorical exclusions under NEPA.

Defendants also argue that the lease suspensions do not fall under the extraordinary circumstances exceptions to the categorical exclusions because the suspensions do not have environmental effects. Defendants assert that the suspensions do not authorize any activities that will affect the environment because no activities, including the required milestones, will occur until after the lessees file new or revised EPs or DPPs. Responding to one of Plaintiffs' arguments that the extraordinary circumstances exceptions apply, Defendants assert that mere opposition to the suspension is not enough to render an activity highly controversial as defined by the ex-

traordinary circumstances exceptions to the categorical exclusions. Rather, Defendants claim that a highly controversial activity is one that generates dispute among scientists about its environmental effects.

Although Defendants acknowledge that circumstances have changed, they argue that nothing in NEPA requires them to provide an EA or an EIS, or to supplement existing EISs.

The Court finds that the MMS should have provided some explanation for its reliance on the categorical exclusion and its view that the extraordinary circumstances exceptions do not apply before granting the requested suspensions. In *Jones*, the National Marine Fisheries Service issued a permit to Sea World, Inc. without conducting an EIS because the permit was defined as a categorical exclusion. *See* 792 F.2d at 821, 823. The district court ruled that the agency's action fell within an exception to the categorical exclusion and that the agency failed "to explain adequately its decision not to prepare an environmental impact statement." *Id.* at 828. The district court ordered the agency to prepare an EIS. The Ninth Circuit held that "the district court did not err in concluding that the decision of the [National Marine Fisheries] Service not to prepare an environmental impact statement was unreasonable." *Id.* The Ninth Circuit pointed out that the agency "did not discuss whether an exception to the categorical exclusions applied." *See id.* The Ninth Circuit also noted, "An agency cannot avoid its statutory responsibilities under NEPA merely by asserting that an activity it wishes to pursue will have insignificant effect on the environment. Instead an agency must provide a reasoned explanation for its decision." *Id.* (internal quotations omitted). The Ninth Circuit reversed the district court's order that the agency prepare an EIS, requiring instead that it "provide a reasoned explanation of whatever course it elects to pursue." *Id.* at 829.

In this case, the MMS did not issue any document discussing either its reliance on the categorical exclusion for the lease suspensions or the inapplicability of the extraordinary circumstances exceptions to the categorical exclusion.

Plaintiffs have made a sufficient showing that the suspensions may meet an extraordinary circumstance exception to the categorical exclusion to justify requiring an explanation from the agency. Therefore, the MMS must provide a reasoned explanation for its reliance on the categorical exclusion and explain the inapplicability of the extraordinary circumstances exceptions. The MMS need not prepare an EIS or an EA at this time, however.

CONCLUSION

Therefore, pursuant to the CZMA, 16 U.S.C. § 1456(c)(1), the MMS must provide the State of California with a determination that its grant of the lease suspensions at issue here is consistent with California's coastal management program. In addition, pursuant to NEPA, the MMS must provide a reasoned explanation for its reliance on the categorical exclusion and the inapplicability of the extraordinary circumstances exceptions.

Thus, Plaintiffs' Motion for Summary Judgment (Docket # 82) and Request for Judicial Notice (Docket # 97) are GRANTED. Defendants' Cross–Motion for Summary Judgment (Docket # 88) and Defendant Operator Intervenors' Motion for Summary Judgment (Docket # 85) are DENIED. Accordingly, the MMS shall set aside its approval of the requested suspensions, and shall direct suspensions of the thirty-six leases, including all milestone activities, for a time sufficient for it to provide the State of California with a consistency determination in compliance

with CZMA § 1456(c)(1) and its implementing regulations. Furthermore, before again granting these lease suspensions, the MMS shall provide a reasoned explanation for its reliance on the categorical exclusion and the inapplicability of the extraordinary circumstances exceptions. Judgment for Plaintiffs shall enter in accordance with this order. Each party shall bear its own costs.

IT IS SO ORDERED.