**Opinion issued June 20, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00698-CV

————————————

**TORCH ENERGY ADVISORS INCORPORATED, Appellant**

**V.**

**PLAINS EXPLORATION & PRODUCTION COMPANY, Appellee**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-50535**

---

## O P I N I O N

Appellee, Plains Exploration & Productions Company, recovered over $83 million in a lawsuit against the federal government concerning offshore oil and gas leases. Appellant, Torch Energy Advisors Incorporated, claimed an interest in a

portion of Plains Exploration's recovery and brought the underlying suit. The trial court rendered summary judgment in favor of Plains Exploration on Torch Energy's claims. In two issues, Torch Energy argues the trial court erred by granting summary judgment (1) on its breach of contract claim because Torch Energy, in its conveyance of the oil and gas leases to Plains Exploration, retained the rights to a portion of what Plains Exploration recovered in the suit against the federal government and, alternatively, (2) Torch Energy had a right to recover the money under a theory of money had and received.

We affirm, in part, and we reverse and remand, in part.

## Background

From 1968 to 1984, the federal government, through the Mineral Management Service ("MMS") of the Department of the Interior, granted to a number of private entities certain oil, gas, and mineral leases on the outer continental shelf off the coast of California. These leases were governed by a body of federal statutes and regulations. The statutory law included the Submerged Lands Act, the Offshore Continental Shelf Lands Act, and the Coastal Zone Management Act (the "CZMA").

During this period, Ogle Petroleum obtained 23 of these leases. It paid the federal government bonuses as one of the requirements to obtain the leases. The leases, like all others issued during this period, were for a period of five years.

2

Under certain circumstances, however, the leases could be suspended, delaying their expiration.

In 1990, the federal government amended the CZMA. The amendment broadened circumstances when the federal government would have to perform "consistency determinations" to ensure that activity on the outer continental shelf was consistent with the corresponding state's coastal management program. Despite the changes, MMS and the lessees interpreted the statute to not include lease suspensions as an activity that required a consistency determination.

California took the position that the 1990 CZMA amendment required consistency determinations for lease suspensions. It did not seek a legal ruling on this dispute, however, until 1999. Between the 1990 CZMA amendment and California's later legal challenge, a number of conveyances relevant to this suit took place.

First, on July 8, 1994, Ogle Petroleum conveyed in full its interest in its leases to Torch Energy. Second, on December 1, 1994, Torch Energy conveyed to what is now Plains Exploration a 50% interest in the Ogle Petroleum leases. Third, on April 4, 1996, Torch Energy conveyed to what is now Plains Exploration the remaining 50% interest in the Ogle Petroleum leases. The contract effecting this last conveyance, however, excluded from the conveyance certain rights and claims. What exactly was excluded is a matter of dispute between the parties in this suit.

In 1999, California filed its suit, challenging MMS's grant of certain lease suspensions. The district court ultimately agreed with California, ruling that MMS had to make a consistency determination before granting a requested suspension. *California v. Norton*, 150 F. Supp. 2d 1046, 1053 (N.D. Cal. 2001) ("*Norton I*"). The Ninth Circuit later affirmed this ruling. *California v. Norton*, 311 F.3d 1162, 1178 (9th Cir. 2002) ("*Norton II*").

The rulings in *Norton I* and *Norton II* spawned litigation between certain lessees, including Plains Exploration, and the federal government. The lessees filed suit on January 9, 2002, claiming that changing the statutory framework to allow states some control over lease suspensions constituted a breach of the leases, entitling them to restitution for the bonuses that the lessees had paid to the federal government when the leases were issued. The court of federal claims agreed. It ruled that the 1990 CZMA amendments violated the leases. *Amber Res. Co. v. United States*, 68 Fed. Cl. 535, 548 (2005) ("*Amber I*"). Under *Amber I*, Plains Exploration was awarded over $83 million in restitution for the bonuses paid by Ogle Petroleum. The Federal Circuit agreed with most of the district court's analysis, except that it held the breach did not occur until the district court's ruling

4

in *Norton I. Amber Res. Co. v. United States*, 538 F.3d 1358, 1369–70 (Fed. Cir. 2008) ("*Amber III*").[1]

Before August 13, 2010, Torch Energy informed Plains Exploration that it believed it was entitled to approximately half of Plains Exploration's recovery from the *Amber* lawsuit under the terms of the 1996 contract. Plains Exploration rejected Torch Energy's position. Torch Energy filed suit on August 13, 2010, asserting a number of causes of action, including breach of contract and money had and received. Plains Exploration answered, asserting a number of affirmative defenses.

Ultimately, the parties filed cross-motions for summary judgment. Plains Exploration argued that the existence of the 1996 contract prevented Torch Energy from recovering under any action other than breach of contract, that the breach of contract claim failed as a matter of law, and that the breach of contract claim was barred by limitations. Torch Energy argued that it was entitled to summary judgment on liability for its breach of contract claim, that it was entitled to summary judgment on liability for its other claims, that it was entitled to

---

[1] The district court in the *Amber* cases issued a second opinion, which the Federal Circuit referred to as "*Amber II*." *See Amber Res. Co. v. United States*, 538 F.3d 1358, 1369–70 (Fed. Cir. 2008) (citing *Amber Res. Co. v. United States*, 73 Fed. Cl. 738 (2006)). The second district court opinion is not relevant to our analysis. Nevertheless, we refer to the Federal Circuit's opinion as "*Amber III*" for consistency across opinions.

$43,959,041 in damages as a matter of law, and that there was no evidence to support Plains Exploration's affirmative defenses.

The trial court granted Torch Energy's motion for summary judgment on Plains Exploration's affirmative defenses of statute of limitations, laches, and unclean hands. It denied the remainder of the motion. It further concluded that the economic-loss rule barred Torch Energy non-breach-of-contract claims. Finally, it ruled that "the [1996] Contract did not provide that Torch [Energy] retained any rights to recover any restitution awards for the breaches of the leases committed by the federal government described in *Amber Resources*."

## Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as

6

to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party moves for summary judgment on a claim for which it bears the burden of proof, it must show that it is entitled to prevail on each element of its cause of action. *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The party meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial. *Id.* In contrast, a party moving for traditional summary judgment on a claim for which it does not bear the burden of proof must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we

7

review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### Breach of Contract

The elements for a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.— Houston [1st Dist.] 1997, no writ). The only element of Torch Energy's breach of contract claim that is in dispute is the third element, breach of the contract by the defendant. The trial court granted summary judgment, ruling that Torch Energy did not retain any right to the money that Plains Exploration recovered from the federal government, that is, that the 1996 contract conveyed to Plains Exploration the remaining interest in the right to recover the bonuses from the federal government. The trial court further ruled that, accordingly, Plains Exploration did not breach the 1996 contract by failing to share any of its recovery from the federal government with Torch Energy.

The central dispute between the parties is whether the 1996 contract conveyed the remaining interest in the right to recover the bonuses from the federal government. Plains Exploration argues that the interest was conveyed to it in the

8

contract.  Torch Energy argues that the interest was excluded from the conveyance to Plains Exploration.

If Plains Exploration's interpretation of the contract—that the 1996 contract conveyed the remaining interest in the right to recover the bonuses from the federal government —is correct, then Plains Exploration has not breached the contract. Under this interpretation, there can be no breach because Plains Exploration had legal right to the full recovery.

It is equally true, however, that if Torch Energy's interpretation of the contract—that the remaining interest in the right to recover the bonuses from the federal government was excluded from the 1996 conveyance—is correct, then Plains Exploration still has not breached the contract.  Under this interpretation, the remaining interest was *excluded* from the contract, meaning it was never made a part of the contract.  It follows, then, that there was nothing in the contract for Plains Exploration to breach when it claimed full interest in the right to recover the bonuses, even if that claim was wrong.  Claiming ownership of money that was not part of a contract may be actionable, but not as a breach of contract cause of action.

The Supreme Court of Texas has held that the acts of parties to a contract "may breach duties in tort or contract alone or simultaneously in both.  The nature of the injury most often determines which duty or duties are breached.  When the injury is only the economic loss to the subject of a contract itself, the action sounds

in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). This is known generally as the economic loss rule. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011). The obverse to this rule is that, when the injury is only an economic loss distinct from the subject of the contract, the action cannot sound in contract. *Cf. Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding "breach occurs when a party fails or refuses to do something he has promised to do").

Assuming without deciding that the 1996 contract excluded from the conveyance the remaining interest in the right to recover the bonuses, then it did just that: excluded the conveyance of the right to recover the bonuses from the contract. Because a claim for the remaining interest in the bonuses would not constitute a breach of the contract, Torch Energy has failed to establish on appeal that the trial court erred by granting summary judgment on its breach of contract claim. *See Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 467 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding "[i]t is an appellant's burden to demonstrate reversible error"). Accordingly, we overrule appellant's first issue.

## Money Had and Received

In its second issue, Torch Energy argues that the trial court erred by granting summary judgment against it on its money had and received claim. Money had

and received is an equitable remedy that concerns whether the defendant holds money that belongs to the plaintiff. *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951). The trial court ruled that the economic loss rule barred Torch Energy's recovery under this and other equitable claims. As we have indicated above, this was erroneous.

"[T]he economic loss rule only [has been applied] in cases involving defective products or failure to perform a contract." *Sharyland*, 354 S.W.3d at 418. There is no obligation, duty, or other kind of right in the contract that would form the basis of Torch Energy's breach of contract claim. "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes*, 711 S.W.2d at 618. The alleged injury here is Plains Exploration's recovery of bonuses from the federal government that Torch Energy asserts it retained the right to recover. If this theory is correct, the right to recover the bonuses was a matter that was specifically excluded from the contract. If this theory is incorrect, there is no injury. In either scenario, there is no economic loss to the subject of a contract because even if Torch Energy has a right to recover part of the bonus, that right is not part of the contract. Accordingly, we hold the trial court erred by ruling that the economic loss rule precluded Torch Energy's recovery under its money had and received claim.

We sustain Torch Energy's second issue.

11

## Contract Interpretation

Here, the parties fully presented the matter of how to interpret the contract as it relates to the right to recover the bonuses from the federal government. The trial court even ruled on this issue, ruling in favor of Plains Exploration. This matter was presented under the breach of contract action, which we have held that Torch Energy cannot recover under regardless of how the contract is interpreted. The matter is still relevant, however. Its resolution will control whether Torch Energy can recover under an equitable claim.

As it stands, then, the matter is still relevant, the parties still have the same position, and nothing in our analysis so far would suggest a different ruling for the trial court. If we were to remand this case based on Torch Energy's claim of money had and received without analyzing the contract interpretation matter, the most obvious result is that the matter would again be presented in a summary judgment motion, though applied this time to Torch Energy's equitable claim. The trial court would in all likelihood make the same ruling that the claims to bonuses were conveyed to Plains Exploration, and the issue would come to us in another appeal in much the same form.

We are obligated to analyze every issue that is properly raised and that is necessary to final disposition. *See* TEX. R. APP. P. 47.1; *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). In the interest of judicial economy, we

may, in addition, consider summary judgment grounds preserved for review that the trial court did not rule on. *Cincinnati Life*, 927 S.W.2d at 626. Here, we have a matter that was both preserved for review *and* ruled on by the trial court. We hold that, in the interest of judicial economy, we can consider the matter of contract interpretation. We choose to do so.

"In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). We begin this analysis with the contract's express language. *Id.* (citing *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009)). We review the contract as a whole, giving effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson*, 128 S.W.3d at 229. "We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

If, after the rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005); *Samson Lone Star, Ltd. P'ship v. Hooks*, 389 S.W.3d 409, 437 (Tex.

13

App.—Houston [1st Dist.] 2012, pet. filed). In contrast, if a contract's meaning is uncertain or is reasonably susceptible to more than one interpretation, then it is ambiguous and its meaning must be resolved by the finder of fact. *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). An ambiguity in a contract may be patent or latent. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). A patent ambiguity is apparent on the face of the contract, while latent ambiguity only becomes apparent when a facially unambiguous contract is applied under particular circumstances. *Id.*

Before we analyze the contested provisions in the 1996 contract, it is useful to establish certain matters that are not in dispute. Ogle Petroleum obtained the relevant leases from the federal government between 1968 and 1982. Ogle Petroleum paid the government bonuses as one of the requirements to obtain the leases. In July 1994, Ogle Petroleum fully conveyed all of its interest in the leases to Torch Energy. Later that year, Torch Energy conveyed 50% of its interest in the leases to Plains Exploration. It is undisputed, then, that Plains Exploration was entitled to the bonuses paid to the federal government for Plains Exploration's portion of the Ogle Petroleum leases that it obtained in 1994. Whether Plains Exploration was entitled to the remainder of the bonuses paid under the Ogle Petroleum leases is determined by the language of the 1996 contract.

14

The 1996 contract was signed on or about April 4, 1996. It contained an earlier effective date, however. It was effective as of October 1, 1995. The contract defines two categories of assets. The first category, called "the Properties," identifies all items that are conveyed from Torch Energy to what is now Plains Exploration. The second category, called "the Excluded Assets," identifies all items that are excluded from the conveyance from Torch Energy to Plains Exploration, even if otherwise encompassed by the first category. Accordingly, in order for something to be conveyed to Plains Exploration, it (1) had to be included in the Properties and (2) could not be listed in the Excluded Assets.

With this context in mind, we consider the disputed portions of the 1996 contract. First we consider portions in the Properties category. Plains Exploration argues that the Properties category "presumptively conveyed the right to sue for enforcement of the leases." We do not construe this provision as broadly as Plains Exploration.

One of the items conveyed in the Properties category is labeled "Oil and Gas Properties." It is defined, in pertinent part, as "[a]ll leasehold interests or operating rights in the oil and gas leases . . . ." Plains Exploration argues that this language conveyed the remainder of the Ogle Petroleum leases to it. We disagree.

15

There is a distinction to be drawn between a conveyance of an interest in a lease and the conveyance of the lease itself. In *Childress v. Siler*, Childress had executed an assignment of an existing lease to Siler. 272 S.W.2d 417, 419 (Tex. Civ. App.—Waco 1954, writ ref'd n.r.e.). After the lease was cancelled, Siler sued Childress. *Id.* On appeal, Childress argued the assignment functioned as a quitclaim on the "right, title and interest" in the lease. *Id.* at 420. The court disagreed, explaining that the language in the assignment "evidences the intention on the part of Childress to convey the lease itself and not merely the grantor's title and interest therein." *Id.*

The opposite is true here, as it relates to the Oil and Gas Properties item. As Torch Energy points out, the Oil and Gas Properties item, conveys the "leasehold interests or operating rights *in* the oil and gas leases," not the leases themselves. (Emphasis added.) Accordingly, this item did not fully convey the leases to Plains Exploration.

Further down in the Properties category is an item labeled "Contracts." This item conveys, in pertinent part, "[a]ll contracts and arrangements that directly relate to the Properties and the operation, pooling, unitization, [etc.] of Substances therefrom and any and all amendments, ratifications or extensions of the foregoing, to the extent that any of the foregoing relate to periods on or after the Effective Date . . . ." Plains Exploration, in its argument that the Oil and Gas Properties item

16

conveyed the leases, argues the leases were not conveyed in the Contracts item because the Contracts item only concerns "agreements with third parties to assist with development of the leases, not the leases themselves." We again must disagree.

The Contracts item conveys all contracts that directly relate to (1) the Properties and (2) the operation, pooling, unitization, etc. of the substances extracted from the Properties. The Properties category includes the leasehold interest and operating rights in the leases. It follows that the leases are necessarily contracts that directly relate to the Properties category. This item, then, conveys the remainder of the Ogle Petroleum leases "to the extent that [the remainder of the Ogle Petroleum leases] relate to periods on or after" October 1, 1995.

This leaves us to determine whether the Contracts item conveyed the right to recover from the federal government the bonuses paid at the start of the leases. We hold that this item is ambiguous on this matter.

The recovery that Plains Exploration obtained was for bonuses paid between 1968 and 1982. In this sense, the recovery relates to a period before October 1, 1995. The breach of the leases, however, did not occur until after June 20, 2001. *See Amber III*, 538 F.3d at 1370 (holding breach did not occur until after trial court's decision in *Norton I*); *Norton I*, 150 F. Supp. 2d 1046 (issued June 20, 2001). In this sense, the recovery relates to a period after October 1, 1995. The

17

basis of the breach was the amendment of the CZMA in 1990, which obviously relates to a period before October 1, 1995. *See Amber III*, 538 F.3d at 1370 (holding that basis of breach was *Norton* trial court's injunction requiring federal government to apply provisions from 1990 CZMA amendments).

It can only be said, then, that the recovery of bonuses from the federal government relates to periods both before and after October 1, 1995. The 1996 contract does not explain whether matters relating to periods both before and after October 1, 1995 are conveyed to Plains Exploration or retained by Torch Energy.

Torch Energy argues in its post-submission letter-brief that "the choice of terms like 'arising from,' 'arising under or with respect to,' and 'attributable to,' puts the emphasis on the front end of the process, not the back end." It provides no support for this assertion, however, and we find no reason to so conclude. A plain reading of the contract does not compel any specific result. Accordingly, the contract is patently ambiguous about whether the right to recover bonuses from the federal government was included as a right conveyed to Plains Exploration. *See Nat'l Union Fire Co.*, 907 S.W.2d at 520 (defining patent ambiguity as ambiguity apparent on face of contract). We hold the trial court could not have ruled as a matter of law, then, that "the [1996] Contract did not provide that Torch [Energy] retained any rights to recover any restitution awards for the breaches of the leases committed by the federal government described in *Amber Resources*."

18

Cross-motions were filed. Accordingly, we next consider whether the trial court should have granted Torch Energy's motion for summary judgment on its breach of contract claim. Such a ruling would only have been possible if, as a matter of law, the 1996 contract excluded the right to recover the bonuses from the conveyance to Plains Exploration. *See Parker*, 98 S.W.3d at 299 (holding when plaintiff moves for summary judgment on its cause of action, it must show that it is entitled to prevail on each element of its cause of action). As we stated above, in order for an item to be conveyed to Plains Exploration, the item (1) had to be included in the Properties and (2) could not be listed in the Excluded Assets. Accordingly, even if the Contracts item encompassed the right to recover the bonuses, it was not conveyed if it was otherwise excluded under the Excluded Assets.

The 1996 contract defines "Excluded Assets" to encompass a number of items. Torch Energy argues two of the items are relevant to this suit. In pertinent part, the Excluded Assets include

> . . . (b) all claims and causes of action of [Torch Energy] (i) arising from acts, omissions or events, or damage to or destruction of property, occurring prior to the Effective Date, [or] (ii) arising under or with respect to any of the Contracts that are attributable to periods of time prior to the Effective Date (including claims for adjustments or refunds) . . . [and] (g) all proceeds, income or revenues (and any security or other deposits made) attributable to (i) the properties for any period prior to the Effective Date . . . .

19

One of the central disputes between the parties is the meaning of the word "claims" in the definition of Excluded Assets. Specifically, the parties dispute whether "claims" only encompasses "asserting an existing right" or whether "claims" also encompasses contingent rights.

"We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream*, 294 S.W.3d at 168. As used in this contract, "claim" is a legal term of art. Black's Law Dictionary lists four general definitions of the word. *See* BLACK'S LAW DICTIONARY 281–82 (9th ed. 2009). The first is "[t]he aggregate of operative facts giving rise to a right enforceable by a court." *Id.* at 281. The definition that most closely matches Plains Exploration's definition is "[t]he assertion of an existing right; any right to payment or to an equitable remedy, *even if contingent or provisional*." *Id.* at 281–82 (emphasis added). Additionally, within the list of the defined subtypes of claims is "contingent claim," which is defined as "[a] claim that has not yet accrued and is dependent on some future event that may never happen." *Id.* at 282.

These definitions do not categorically exclude contingent rights from the meaning of claim. Some of the definitions specifically encompass contingent rights. Plains Exploration relies on two cases in arguing that "claim" cannot include contingent rights. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy,*

20

*Inc.*, 962 S.W.2d 507 (Tex. 1998); *Vacek Group, Inc. v. Clark*, 95 S.W.3d 439 (Tex. App.—Houston [1st Dist.] 2002, no pet.). These cases are distinguishable, however.

*Johnson* concerned how to calculate prejudgment interest. 962 S.W.2d at 528. In this context, the Texas Supreme Court defined "claim" as "'a demand for compensation or an assertion of a right to be paid.'" *Id.* at 531 (quoting *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App.—Austin 1995, writ denied)). Such a definition makes clear sense in this context. As *Johnson* explains, "Prejudgment interest is 'compensation . . . for lost use of the money due as damages during the lapse of time between *the accrual of the claim* and the date of judgment.'" *Id.* at 528 (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.3d 549, 552 (Tex. 1985)) (emphasis added). A claim accrues "when the wrongful act effects an injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). In other words, a claim does not accrue when the right to recover is contingent on future events—such as when the injury has not occurred. Accordingly, in the context of prejudgment interest, "claim" does not include contingent rights. This does not mean, however, that "claim" can never encompass contingent rights.

Similarly, *Vacek* concerned a specific rule for tolling on legal malpractice claims. 95 S.W.3d at 442–43. We explained,

> In *Hughes*, the Texas Supreme Court observed that "when an attorney commits malpractice while providing legal services in the prosecution

21

or defense of a claim which results in litigation, the legal injury and discovery rules can force the client into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case."

*Id.* (quoting *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991)). Accordingly, the Texas Supreme Court established a rule for tolling, "stating that the statute of limitations for a malpractice claim against an attorney, committed in the prosecution or defense of a claim that results in litigation, is tolled until all appeals on the underlying claim are exhausted." *Id.* at 443 (citing *Hughes*, 821 S.W.2d at 157).

The question in *Vacek* concerned whether this tolling rule also applied to transactional malpractice. *Id.* at 445. We held that, based on the definition of the words used by the Texas Supreme Court, the tolling rule did not apply to transactional malpractice. *Id.* In *Vacek*, we defined claim "as 'the assertion of an existing right; any right to payment or to an equitable remedy.'" *Id.* (quoting BLACK'S LAW DICTIONARY 240 (7th ed. 1999)).

Again, in context, this definition makes clear sense. We also observed in *Vacek* that the use of the words "prosecution" and "defense" in the tolling rule indicated that the Texas Supreme Court was contemplating active litigation for the tolling rule. *Id.* at 446. Accordingly, claim would not include contingent rights when the litigation is already underway.

22

Contrary to Plains Exploration's argument, we are compelled to conclude that "claim" can encompass contingent rights. Countless Texas cases analyze whether a claim is ripe. *See, e.g.*, *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011); *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000); *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). "In considering whether a claim is ripe, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being *contingent* or remote." *Harris Cnty. Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.3d 133, 139 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (internal quotes omitted; emphasis added). Under Plains Exploration's interpretation of the word claim, the phrase "unripe claim" would be an oxymoron and "ripe claim" would be redundant. The implicit and obvious conclusion from this mass of cases, however, is that the word claim, in its ordinary usage, includes contingent claims and that a ripe claim is a subcategory within that broader term. This is in line with the definitions in Black's Law Dictionary.

Just because the word claim can include contingent claims, however, does not mean that it does in the 1996 contract. Just as the context of the word claim in *Johnson* and *Vacek* excluded contingent claims from its definition, the context of

23

the word claim as used in the 1996 contract could exclude contingent claims from its definition. We consider, then, the context in which the word claim is used.[2]

Item (b) of the Excluded Assets category excludes two sets of claims and causes of action. First, it excludes "all claims and causes of action of [Torch Energy] (i) arising from acts, omissions or events, or damage to or destruction of property, occurring prior to" October 1, 1995. This exclusion suffers from the same problem as the definition of Contracts in the Properties category. There are acts, omissions, and events that occurred before October 1, 1995. There is also at least one act or event that occurred after October 1, 1995. The contract is silent about whether this means the claim relating to these acts, omissions, and events were excluded from or included in the conveyance. Accordingly, it is patently ambiguous.

Second, item (b) excludes "all claims and causes of action of [Torch Energy] . . . (ii) arising under or with respect to any of the Contracts that are attributable to periods of time prior to [October 1, 1995] (including claims for adjustments or

---

[2]     Plains Exploration points to other sections of the 1996 contract that it argues use "claim" only in the context of existing rights. Assuming without deciding that this is correct, Plains Exploration does not explain why the context for the use of the word in these other sections should prevail over the context for the word in the section actually in dispute. Moreover, one of the other sections that Plains Exploration relies on is a covenant by Torch Energy not to "waive, compromise or settle any right or claim that would materially and adversely affect the ownership, operation or value of any of the Properties after the Effective Date." We see no justification in interpreting this section to prevent Torch Energy from settling a ripe claim while allowing Torch Energy to settle contingent claims.

refunds)." The same problem exists for this exclusion. The claim is attributable to periods of time both before and after October 1, 1995. This exclusion, then, is also patently ambiguous. For the same reason, we are prevented from determining whether item (b) included or excluded contingent claims.

Finally, item (g) under Excluded Assets excludes "all proceeds, income or revenues (and any security or other deposits made) attributable to (i) the properties for any period prior to" October 1, 1995. Torch Energy argues that the recovery of the bonuses from the federal government constitutes proceeds, income, and revenue. Assuming that this is correct, item (g) still suffers from the same problem as item (b). In one sense, the recovery of the bonuses—whether constituting proceeds, income or revenue—is attributable to a period before October 1, 1995, because that is when the bonuses were paid to the government. In another sense, the recovery of the bonuses is attributable to a period after October 1, 1995, because that is when the breach occurred. While it is true that without payment of the bonuses, there could be no recovery, it is equally true that without the breach there also could have been no recovery.[3] This provision, then, is also patently ambiguous.

---

[3]    Plains Exploration argues that the events before October 1, 1995 are too tenuous and remote to constitute "arising from," "arising under," or "relating to" as used in items (b) and (g). *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (holding "'arise out of' means that there is simply a 'causal connection or relation,' . . . which is interpreted to mean that there is but for

In summary, the contract is ambiguous as to whether the right to recover the bonuses was designated to be conveyed under the Properties category. Even assuming that it was designated to be conveyed under the Properties category, the contract is still ambiguous as to whether the right to recover the bonuses was excluded under the Excluded Assets category. While "claim" can mean "contingent claim," the context of the remaining language creates an ambiguity about whether contingent claims relating to and arising from both before and after the effective date were excluded. Similarly, the contract is ambiguous about whether proceeds attributable to both before and after the effective date were excluded.

---

causation, though not necessarily direct or proximate causation"). We do not consider the payment of the very bonuses that Plains Exploration recovered or the enactment of the 1990 CZMA amendment that formed the basis of the federal government's subsequent breach to be too tenuous and remote.

## Conclusion

We affirm the judgment of the trial court as it relates to Torch Energy's breach of contract claim. We reverse the judgment of the trial court as it relates to Torch Energy's money had and received claim, and remand for further proceedings.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.