

# NUMBER 13-08-00612-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**BANK OF AMERICA, N.A.,**                                          **Appellant,**

**v.**

**JERRY L. BARTH,**                                               **Appellee.**

## On appeal from the County Court at Law No. 2 of Hidalgo County, Texas.

# MEMORANDUM OPINION ON REMAND

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion on Remand by Justice Rodriguez

This case is before us on remand from the Texas Supreme Court. *See Barth v. Bank of America, N.A.*, 351 S.W.3d 875, 877 (Tex. 2011) (per curiam). On original submission, addressing only the first issue, we reversed the trial court and rendered judgment against appellee Jerry L. Barth holding, among other things, that the verdict did

not support the judgment because Bank of America, N.A., was misidentified. *Barth v. Bank of America, N.A.,* 352 S.W.3d 7, 12 (Tex. App.—Corpus Christi 2010), *rev'd and remanded*, 351 S.W.3d at 877. However, the Texas Supreme Court concluded that any reference to Bank of America, N.A., as Bank of America, was "a clear case of misnomer" and that "[n]othing in the record suggest[ed] that the jury could possibly have been confused, and its answers must be taken to be applicable to Bank of America, N.A." *Barth*, 351 S.W.3d at 877. In so concluding, the supreme court determined that the verdict supported the judgment against Bank of America, N.A., and remanded the case to this Court for consideration of other issues raised by appellant Bank of America, N.A. (the Bank). *Id.*

By its remaining issues now before this Court, the Bank contends that: (1) Barth's claims are barred by limitations; (2) the trial court abused its discretion in its rulings on the admissibility of evidence; (3) the essential element of fraud is conclusively negated; (4) the trial court erred by awarding exemplary damages; (5) the trial court erred by awarding attorney's fees; and (6) it was entitled to judgment notwithstanding the verdict or, alternatively, a new trial.[1] We affirm in part and reverse and render in part.

## I. BACKGROUND

It is undisputed that Barth borrowed money from NationsBank of Texas, N.A., a predecessor to the Bank. Barth testified that, on August 31, 1998, he paid off the outstanding balance owed, "[b]ut the word didn't get down to the—to the lady that was handling [his] personal account." The Bank continued to send monthly written payment

---

[1] On remand, we have reorganized and renumbered the remaining issues.

notices to Barth, and Barth's employees continued to make payments. Barth testified that in January 2002, he "noticed that there was a payment going out and [he] didn't think it was right." According to Barth, he began making inquiries to the Bank but waited until March 3, 2002 to make the last payment because he did not want the nonpayment of the disputed debt to affect his credit rating or standing. Barth testified that he overpaid the Bank $28,663.31.

On September 17, 2004, Barth sued the Bank, claiming that he paid more than he owed on a line of credit. The Bank answered, asserting, among other things, a statute of limitations defense. The jury found the Bank liable and awarded Barth the following: (1) $28,663.31 in actual damages; (2) $350,000.00 in exemplary damages as a result of the jury's fraud findings, which the trial court capped at $257,326.62; (3) $350,000.00 in Deceptive Trade Practices Act (DTPA) damages, which the trial court reduced to $85,989.93; and (4) $15,000 in trial attorney's fees, $15,000 in attorney's fees for proceedings in the court of appeals, and $20,000 in attorney's fees for proceedings in the Texas Supreme Court, should appeals be taken to the respective courts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (West Supp. 2011) (setting cap on amount of exemplary damages awarded); TEX. BUS. & COM. CODE ANN. § 17.50 (West 2011) (providing for the type and amount of damages that can be awarded on a DTPA claim). The trial court conditionally granted the Bank's motion for election of remedies and awarded exemplary damages that resulted from the fraud claim and, if overturned on appeal, the reinstatement of the DTPA damages. The Bank's supplemental motion for judgment notwithstanding the verdict (JNOV) and motion for new trial were overruled by operation of law, and this appeal followed.

## II.    LIMITATIONS

By its first issue, the Bank contends that Barth's claims are barred by limitations because the trial court failed to apply the law of accrual properly on all claims. This complaint, through the Bank's sixth issue, challenges the trial court's denial of the Bank's motion for JNOV. The Bank argues that the trial court should have granted its motion for JNOV because its defense of limitations prevented Barth from prevailing on all of his claims.[2]

### 1.    Applicable Law and Standard of Review

Determining when a cause of action accrues is a question of law for the trial court. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *Ehrig v. Germania Farm Mut. Ins. Ass'n*, 84 S.W.3d 320, 323 (Tex. App.—Corpus Christi 2002, pet. denied). "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Ehrig*, 84 S.W.3d at 323 (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)). The accrual of a cause of action is deferred in two types of cases: (1) those involving fraud or fraudulent concealment and (2) those where the injury is "inherently undiscoverable" and is "objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). The supreme court has noted that the commission of fraud or fraudulent concealment works to estop a defendant from asserting limitations as a defense because

---

[2] In response, Barth asserts that the Bank waived its limitations defense. We disagree. The Bank raised the defense in its pleading. It also argued limitations as part of its motions for directed verdict and for JNOV. In addition, the jury was given and answered a broad form discovery question, which the Bank notes is applicable to all causes of action based on Barth's alleged overpayment. Thus, we are not persuaded by Barth's waiver argument.

4

"a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6; *see Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (explaining that the discovery rule or, as set out in *S.V.*, a delayed accrual applies to cases involving fraud or fraudulent concealment); *Computer Assoc. Int'l*, 918 S.W.2d at 455–56.

A trial court should grant a defendant's motion for JNOV if a legal principle prevents a party from prevailing on its claim. *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 n.4 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Thus, in reviewing the denial of a motion for JNOV, appellate courts consider whether the movant is entitled to judgment as a matter of law. *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 19 (Tex. App.—Tyler 2003, pet. denied). When the trial court's ruling is based on a question of law, we review that aspect of the ruling de novo. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (stating that questions of law are always subject to de novo review); *see also Hicks v. Hicks*, 348 S.W.3d 281, 284 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (same). Under de novo review, the reviewing court exercises its own judgment and re-determines each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

## 2.    Barth's Fraud Claim

### a.    Accrual

Indulging Barth's fraud theory for purposes of argument only, the Bank contends that any fraud claim accrued as a matter of law the very first time the Bank sent a coupon for payment or otherwise requested that Barth pay some amount that he now claims not to have owed. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (explaining that a fraud claim accrues on the date the defendant makes the false

representation). Barth testified that he paid off the account that forms the basis of this lawsuit on August 31, 1998. Based on the Bank's argument, its first payment request would have occurred in September 1998, six years before Barth filed suit on September 17, 2004. Because a suit for fraud must be brought "not later than four years after the day the cause of action accrues," TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002), the Bank claims that Barth's fraud claim was time barred as a matter of law.

In support of its position and argument, the Bank included the following statement in the summary of its limitations issue: "[Barth's] employees' knowledge is Barth's knowledge." *See* TEX. R. APP. P. 38.1(h) (providing that an appellant's "brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief"). Yet the Bank does not develop this summary statement in its original brief. Rule 38 requires that the Bank provide such discussion of the facts and authorities as may be necessary to maintain its argument in support of its limitations issue. *See Lueg v. Lueg*, 976 S.W.2d 308, 312 (Tex. App.—Corpus Christi 1998, pet. denied) (holding that an argument was waived because the "brief cites us to no specific record references for these alleged facts on record"); *see also Flores v. United Freedom Assocs.*, 314 S.W.3d 113, 116 (Tex. App.—El Paso 2010, no pet.) (overruling an argument as inadequately briefed because appellant failed to cite legal authorities or present argument); *cf. Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) ("An appellant can preserve error 'in the body of their appellate brief,' even if it is not separately listed in the notice of appeal or presented as an issue in the brief."). As our sister court explained:

> It is the Appellant's burden to discuss [its] assertions of error. An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error. Were we

> to do so . . . we would be abandoning our role as neutral adjudicators and become an advocate for that party.

*Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). Here, the Bank developed this argument, citing to the record and authority for the first time in its reply brief. Yet "a party may not present arguments for the first time in its reply brief." *Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.); *see Yazdchi v. Bank One, Tex.*, 177 S.W.3d 399, 404 n.18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We conclude that the Bank inadequately briefed any imputed-knowledge argument and therefore waived it. Without more, we are not persuaded by the Bank's argument that Barth's fraud claim, if any, accrued when it made its request for payment in September 1998.

### b.    Pleadings to Support the Discovery Rule

The Bank also asserts that Barth offered "no pleading to support application of the discovery rule and in complete absence of proof that this type of injury was inherently and undiscoverable and objectively verifiable, . . . waited more than six years—until September 17, 2004—to file this suit." *See S.V.*, 933 S.W.2d at 6; *Computer Assoc. Int'l*, 918 S.W.2d at 456; *Murphy*, 964 S.W.2d at 270. While we agree that Barth did not plead the "inherently undiscoverable and objectively verifiable" theory of accrual, we disagree that Barth offered "no pleading to support application of the discovery rule." Barth implicitly presented the concept of delayed accrual when he asserted his fraud claim, setting out the following facts and allegations in his amended petition:

> Prior to August, 1998, [Barth] had a personal line of credit with Bank of America[, N.A.,] and/or Bank of America's Predecessor in Interest, Nations[ ]Bank. In August of 1998, this note was paid in full.

7

Notwithstanding the fact that the note was paid in full in August of 1998, Bank of America[, N.A.,] continued sending [Barth] monthly invoices claiming that amounts were due under the note. In response to these monthly invoices, [Barth] made payments to Bank of America[, N.A.,] in the amount of $28,663.31.

When [Barth] discovered that he was continuing to make payments on a loan which had long since been paid in full, [Barth] contacted Bank of America[, N.A.,] to determine why invoices continued to be sent on the note which should have shown a zero balance. [Barth] also requested that Bank of America[, N.A.,] refund the $28,663.31 in over payments.

[The Bank] has refused to provide any explanation whatsoever as to why [it] continued to send invoices on the note after August of 1998. In addition, [the Bank] has refused to reimburse to [Barth] the amount of $28,663.31, which [Barth] paid to [the Bank] in response to the monthly statements.

See S.V., 933 S.W.2d at 6 ("Fraud, we have said, in and of itself prevents running of the statute of limitations."); see also Dike v. Peltier Chevrolet, Inc., 343 S.W.3d 179, 187–88 (Tex. App.—Texarkana 2011, no pet.) (concluding that Dike had alleged the concept of delayed accrual, under both theories of accrual, through his fraud and fraudulent concealment claims and by pleading that the injury was inherently undiscoverable and objectively verifiable). Thus, there was no failure to plead, and that legal principle did not prevent Barth from prevailing on his claim. See United Parcel Serv., 25 S.W.3d at 916.

c.    **Trial by Consent**

In any event, Barth raised the discovery rule in his supplemental response to the Bank's motion and amended motion for summary judgment. "[I]f a plaintiff asserts the discovery rule in response to a summary judgment motion raising the statute of limitations, even though the discovery rule has not been pleaded in the plaintiff's petition, the parties will be deemed to have tried the issue by consent unless the defendant objects . . . ." Krohn v. Marcus Cable Assocs., L.P., 201 S.W.3d 876, 880 (Tex.

8

App.—Waco 2006, pet. denied); *see Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) ("When [the plaintiff-nonmovant] asserted the discovery rule for the first time in its summary judgment response, [the defendant-movant] had two choices: it could object that the discovery rule had not been pleaded, or it could respond on the merits and try the issue by consent."). The Bank provides no record citation, and we find none, where it objected to Barth's discovery-rule response. Therefore, even were we to agree that Barth did not plead the discovery rule, we would conclude, nonetheless, that the discovery rule issue was tried by consent in the summary judgment proceeding. *See Krohn*, 201 S.W.3d at 880; *see also Via Net*, 211 S.W.3d at 313.

The discovery rule was also tried by consent at trial when the Bank asked Barth questions regarding when he allegedly discovered that he had been making extra payments on the note. Reading his interrogatory answer into evidence, Barth testified that "[t]he overpayments were discovered in January 2002. I cannot remember the exact date but a letter was sent to Bank of America on January 31, 2002 inquiring about the overpayment. The account transaction history shows a payment of January 10, 2002, so the discovery should have been made around that time." Barth further testified, without objection, that "[i]n January of 2002, [he] noticed that there was a check going out and [he] didn't think it was right. [He] didn't know. [He] was not absolutely certain but [he] did not think it was right."

Because the discovery rule was either pleaded by Barth or tried by consent, we conclude that the trial court correctly applied the discovery rule in this case. The Bank was not entitled to judgment as a matter of law on that basis. *See OXY USA*, 127 S.W.3d at 19.

9

### d.    Finding on the Date Barth Should Have Discovered the Overpayment

Finally, as to Barth's fraud claim, the Bank does not specifically attack the jury's finding that, in the exercise of reasonable diligence, Barth should have discovered the alleged overpayment on January 10, 2002. Instead, the Bank utilizes that finding to support its argument that Barth's remaining claims are time barred. Jury findings not challenged on appeal are binding. *Exxon Corp. v. Tyra*, 127 S.W.3d 12, 16 (Tex. App.—Tyler 2003, pet. denied). So employing the January 10, 2002 delayed-accrual date found by the jury, Barth's September 17, 2004 suit for fraud was timely for purposes of limitations.

To the extent we could construe the Bank's sixth issue as a challenge to this finding, we further conclude that the evidence is sufficient. In order to determine whether the Bank was entitled to JNOV on this basis, we use the same standard that governs a legal sufficiency review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

"When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding." *Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi 2012, pet. denied) (citing *City of Keller*, 168 S.W.3d at 810; *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). "Such a no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Id.* at 328–29 (citing *City of Keller*, 168 S.W.3d at 810; *King*

*Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). "In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 329. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* (quoting *City of Keller*, 168 S.W.3d at 827). A court may disregard a jury's verdict and render judgment JNOV if no evidence supports that finding. *See Tiller v. McClure*, 121 S.W.3d 709, 713 (Tex. 2003) (per curiam) (citing *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 513 (Tex. 1998)).

Considering the evidence in the light most favorable to the jury's January 2002 finding and indulging every reasonable inference that would support that finding, we conclude that there is more than a scintilla of evidence to establish the delayed-accrual date of January 10, 2002, for Barth's fraud action. *See Editorial Caballero*, 359 S.W.3d at 329. Because there was some evidence to support the finding, the trial court properly denied the Bank's JNOV as to this finding. *See Tiller*, 121 S.W.3d at 713.

### e. Summary

We overrule the Bank's first issue and the relevant portion of its sixth issue regarding Barth's fraud claim, limitations, and the discovery rule.

## 3. Barth's DTPA, Negligent Misrepresentation, and Unjust Enrichment Claims

By its first issue, the Bank also contends that the applicable two-year statute of limitations bars Barth's remaining claims. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (West 2011) (setting out the statute of limitations for a violation of the DTPA as two years);

11

*Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 873 (Tex. App.—Dallas 1989, writ denied) (noting that the statute of limitations for negligent misrepresentation is two years); *Heci Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (explaining that an action for unjust enrichment is subject to a two-year statute of limitations). The Bank asserts that, based on the jury's finding that Barth should have discovered the alleged overpayment on January 10, 2002, his remaining claims—all governed by a two-year statute of limitations—are barred because they accrued and limitations began to run no later than that date. We agree.

Barth does not challenge this jury finding on appeal. So based on this finding, Barth's DTPA, negligent misrepresentation, and unjust enrichment causes of action pleaded in his lawsuit filed on September 17, 2004, are barred by limitations.[3] Having so concluded, we need not address the Bank's remaining limitations arguments as to these claims because they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1. We

---

[3] In his brief, Barth refers to equitable estoppel as a defense to the limitations bar. Equitable estoppel, however, is an affirmative defense and if not pleaded, is waived. *See* TEX. R. CIV. P. 94; *Gomez v. Gomez*, 327 S.W.3d 189, 192 (Tex. App.—San Antonio 2010, no pet.); *Daniel v. Falcon Int. Realty Corp.*, 190 S.W.3d 177, 188 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *City of Univ. Park v. Van Doren*, 65 S.W.3d 240, 251 (Tex. App.—Dallas 2001, pet. denied). The clerk's record contains no pleading filed by Barth that refers to equitable estoppel. Therefore, Barth has waived any argument based on equitable estoppel.

Likewise, for the first time in his appellate brief, Barth specifically asserts fraudulent concealment to toll limitations. *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 228 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (explaining that although similar in effect to the discovery rule, the fraudulent-concealment doctrine is an affirmative defense to limitations that resembles equitable estoppel) (citing *Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. App.—Houston [14th Dist.] 2008) (granting a rule 53.7(f) motion); *Autry v. Dearman*, 933 S.W.2d 182, 192 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). It was Barth's burden to plead and secure findings on fraudulent concealment. *See Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex. App.—Austin 1997, pet. denied) (setting out that fraudulent concealment is a defense or plea in avoidance to the running of limitations and must be pleaded in a case where the defendant attempts to hide information about the plaintiff's cause of action); *First Nat'l Bank of Boston v. Champlin Petroleum Co.*, 709 S.W.2d 4, 6 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.); *see also Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The record contains no pleading or finding on fraudulent concealment. Therefore, Barth has also waived this argument.

sustain the Bank's first issue and the relevant portion of its sixth issue regarding limitations and Barth's DTPA, negligent misrepresentation, and unjust enrichment claims.

### III. CHALLENGES TO THE ADMISSION OF EVIDENCE

By its second issue, the Bank asserts that the trial court abused its discretion by overruling the Bank's objections of untimeliness to Barth's Exhibits 5, 6, and 7 and hearsay and incompleteness to Barth's Exhibit 8.[4]   The Bank also claims that the trial court should have excluded all evidence because Barth failed to set forth his plea of payment properly.

### A. Standard of Review

We review the admission or exclusion of evidence for an abuse of discretion. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001); *Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 514 (Tex. App.—Corpus Christi 2002, no pet.).   A trial court abuses its discretion when it acts without reference to any guiding principles or when it acts in an unreasonable and arbitrary manner.   *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 448 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Creative Thinking Sources*, 74 S.W.3d at 514 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).   A trial court's evidentiary ruling must be upheld if there is any legitimate basis for it.   *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

---

[4]   The Bank also generally contends that the trial court abused its discretion when it overruled its objections of relevance to Exhibits 3 and 4; relevance and incompleteness to Exhibit 6; and hearsay to Exhibit 7.   Yet the Bank does not support these contentions with clear and concise arguments or with appropriate citations to authorities.   *See* TEX. R. APP. P. 38.1(i); *see, e.g., Flores v. United Freedom Assocs.*, 314 S.W.3d 113, 116 (Tex. App.—El Paso 2010, no pet.).   We conclude that these contentions regarding Exhibits 3, 4, 6, and 7 are inadequately briefed and, therefore, waived.   *See* TEX. R. APP. P. 38.1(i).

13

**B.     Exhibits 5, 6, and 7**

The Bank first contends that the trial court erred in admitting Barth's Exhibits 5, 6, and 7 because they were produced within thirty days of trial, and that the exhibits should have been automatically excluded under rule 193.6 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 193.6.   Rule 193.6 provides the following:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . , unless the court finds . . . good cause for the failure to . . . supplement the discovery response; or the failure to . . . supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

*Id.*   The party offering the untimely-disclosed evidence has the burden to establish good cause or lack of surprise, which must be supported by the record.   *Id.*; *see Williams v. County of Dallas*, 194 S.W.3d 29, 32 (Tex. App.—Dallas 2006, pet. denied); *Norfolk S. Ry. Co. v. Norfolk S. Ry. Co. v. Bailey*, 92 S.W.3d 577, 581 (Tex. App.—Austin 2002, no pet.); *see also Keystone Architects v. Lanai Dev., L.L.C.*, No. 13-05-542-CV, 2008 WL 523272, at *5 (Tex. App.—Corpus Christi, Feb. 28, 2008, no pet.) (mem. op.).   The purpose behind this rule is to prevent trial by ambush.   *See Aetna Cas. & Sur. Co. v. Specia*, 849 S.W.2d 805, 807 (Tex. 1993) (applying former rule 215(5)); *see also Keystone Architects*, 2008 WL 523272, at *5.

**1.     Exhibit 5**

With respect to Exhibit 5, a May 9, 1997 promissory note for $73,000.00 between NationsBank and borrower Barth, the record establishes that the Bank timely received that exhibit.   The record reveals that Barth filed his response to the Bank's original motion for summary judgment on February 26, 2007 and to its amended motion for

14

summary judgment on August 30, 2007. According to Barth's counsel, he attached copies of the notes, including the May 9 note, to Barth's response. Trial began on April 7, 2008. At the motion-in-limine hearing on the first day of trial, in discussing Exhibit 5, Barth's counsel explained this to the trial court. The Bank's counsel responded, "Right. It was—He attached [it] to his MSJ so he has done that. . . ."

Because it is clear from the record that Barth provided Exhibit 5 to the Bank approximately one year before trial, the trial court did not abuse its discretion in admitting it. *See Helena Chem. Co.,* 47 S.W.3d at 499; *Malone*, 972 S.W.2d at 43; *Creative Thinking Sources*, 74 S.W.3d at 514; *Strauss*, 67 S.W.3d at 448.

### 2. Exhibits 6 and 7

The Bank also asserts that the trial court abused its discretion when it admitted Barth's Exhibits 6 and 7. Exhibit 6 is an August 21, 1998 letter from NationsBank to Old Republic Title Company regarding payoffs for J & E Oil, Inc., one of Barth's companies, and Exhibit 7 is a document titled "Old Republic Title Company Payoff—Los Angeles" and dated August 31, 1998. Barth describes Exhibit 7 as a ledger.

It is undisputed that Barth produced Exhibits 6 and 7 on March 13, 2008, within thirty days of trial. This creates a presumption that the response was untimely. *See* TEX. R. CIV. P. 193.6(a) (providing that it is presumed that a response made within thirty days of trial is not reasonably promptly made). However, Barth explained to the trial court that this production was responsive to a request made by the Bank during mediation. Rule 193 of the Texas Rules of Civil Procedure "imposes a duty upon parties to make a complete response to *written discovery* based upon all information reasonably available, subject to objections and privileges." TEX. R. CIV. P. 193 cmt. 1. (emphasis

15

added).   Nothing in the record shows that the Bank propounded any written discovery request on Barth for third-party documentation of the payment of the personal line of credit.   *See Langley v. Comm'n for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex. App.—Dallas 2006, no pet.) (holding that appellate court "cannot say the trial court abused its discretion" in refusing to exclude documents not produced in discovery when record did not contain relevant discovery requests); *see also In re Lowe's Cos., Inc.*, 134 S.W.3d 876, 880 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding) (concluding that a party cannot be compelled to produce that which it has not been requested to produce).   We cannot say the trial court abused its discretion in refusing to exclude documents that were not produced timely when the record does not contain any relevant written discovery requests.

Even if the record supported such a written request, we would conclude that Barth's failure to timely produce Exhibits 6 and 7 did not unfairly surprise or prejudice the Bank.   *See* TEX. R. CIV. P. 193.6(a)(2).   Exhibit 6 relates to pay-offs for Barth's company. It was reasonable for the trial court to believe that the Bank would not be surprised by its own letter.   And it is undisputed that Barth had already produced his internal documentation, which he claims evidenced the pay off of the personal line of credit. Exhibit 7 related to the wiring of those funds to pay off different accounts.   The Bank's corporate representative Robert Messina also testified later at trial that, to his knowledge, the Bank was not claiming that it did not get the wire transfer referenced in Exhibit 7.   So even assuming that the documents at issue fell within one or more of the Bank's written discovery requests, we cannot conclude that Barth's failure to supplement the discovery response unfairly surprised or prejudiced the Bank.   *See id.* R. 193.6(a)(2).

16

On this record, rule 193.6 did not preclude the trial court's admission of Exhibits 6 and 7 despite any failure by Barth to disclose them timely. The trial court's decision to admit Exhibits 6 and 7 did not constitute an abuse of discretion. *See Langley*, 191 S.W.3d at 915; *see also Helena Chem. Co.,* 47 S.W.3d at 499; *Malone*, 972 S.W.2d at 43; *Creative Thinking Sources*, 74 S.W.3d at 514; *Strauss*, 67 S.W.3d at 448.

## C.   Exhibit 8

The Bank contends that the trial court abused its discretion when it admitted Exhibit 8 over its objections that the exhibit was hearsay and was incomplete.

### 1.   Hearsay

Barth offered and the trial court admitted Exhibit 8, which Barth described, in part, as "an account of [his] personal and other business expenses." The Bank objected that the exhibit was hearsay. Barth asserts he proved up Exhibit 8 as a business record, an exception to the hearsay rule. *See* TEX. R. EVID. 803(6).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *Id.* R. 801(d). Rule 803(6) excludes the following from the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness.

*Id.* at R. 803(6).

Barth testified that his J & E Oil employees handled his personal business dealings and that one of his employees entered the data for this report into his computer at or near

17

the time each transaction occurred. *See id.* He agreed that Exhibit 8 was something that was kept and relied upon in the regular course of his business. *See id.* And Barth, who relied on Exhibit 8 as a record for his personal business transactions and who had his employees enter and keep the data in the form shown on Exhibit 8, testified regarding the details of his business. *See id.* We conclude that the trial court did not abuse its discretion if it concluded that Exhibit 8 was not hearsay, under the business record exception.[5] *See id.; Helena Chem. Co.,* 47 S.W.3d at 499; *Malone*, 972 S.W.2d at 43; *Creative Thinking Sources*, 74 S.W.3d at 514; *Strauss*, 67 S.W.3d at 448.

### 2. Incomplete Document

The Bank also complains that the trial court abused its discretion when it overruled its objection that Exhibit 8 was an incomplete document and admitted it. Exhibit 8 was page 5 from a multipage document, which Barth agreed was a spreadsheet. Barth testified that the entire spreadsheet was from "when the company was created on." The entries on page 5 were from April 30, 1997 through August 31, 1999. The trial court could have determined that the single page was complete because it covered the relevant time period, specifically August 31, 1998, the date Barth claimed to have paid off NationsBank. We conclude that the trial court did not abuse its discretion if it overruled the Bank's objection on this basis. *See Helena Chem. Co.,* 47 S.W.3d at 499; *Malone*, 972 S.W.2d at 43; *Creative Thinking Sources*, 74 S.W.3d at 514; *Strauss*, 67 S.W.3d at

---

[5] The Bank also notes that it objected to the admission of Exhibit 8 on the basis of hearsay within hearsay and directs this Court to two words or parts of words handwritten on that exhibit. Yet the Bank does not develop any argument regarding this objection. *See* TEX. R. APP. P. 38.1(i). We conclude that the Bank inadequately briefed this hearsay-within-hearsay argument and waived it.

448.

## D.   Plea of Payment Challenge

Relying on rule 95 of the Texas Rules of Civil Procedure, the Bank also contends that because Barth failed to set forth his plea of payment properly, all evidence he offered to support his claim should have been excluded.   We disagree.

Rule 95 provides the following:

> When a defendant shall desire to prove payment, he shall file with his plea an account stating distinctly the nature of such payment, and the several items thereof; failing to do so, he shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof.

TEX. R. CIV. P. 95; *see Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 7 (Tex. App.—Waco 2007, pet. denied).

Rule 95 "governs payment as an affirmative *defense*, not payment as an affirmative *claim*."   *Tex. Mut. Ins. Co., v. Ledbetter*, 251 S.W.3d 31, 37 (Tex. 2008) (citing TEX. R. CIV. P. 95).   In this case, Barth was not a defendant or a counter-defendant defending a suit brought by the Bank on a debt.   Barth brought suit against the Bank for his over payment to the Bank.   So rule 95 does not apply as a basis for the trial court to exclude all evidence supporting Barth's claim of payment or overpayment, as the Bank urges.

## E.   Summary

Having concluded that the trial court did not abuse its discretion when it admitted the complained-of exhibits because it had legitimate bases for doing so, *see Malone*, 972 S.W.2d at 43, we overrule the Bank's second issue.   *See Helena Chem. Co.,* 47 S.W.3d at 499.

19

## IV.  BARTH'S FRAUD CLAIM

In its third issue, the Bank asserts that Barth's right of action, if any, is based only on an alleged contract, and thus, the economic loss rule applies.   By its sixth issue, the Bank challenges the trial court's denial of its motion for JNOV based on its argument that Barth's fraud claim was precluded as a matter of law by the economic loss rule.   In addition, by its third and sixth issues, the Bank claims that the evidence is legally insufficient to establish the reliance element of Barth's fraud claim.

### A.   Economic Loss Rule

#### 1.   Standard of Review and Applicable Law

We review the Bank's economic-loss-rule challenge de novo because it is based on a question of law.   *See In re Humphreys*, 880 S.W.2d at 404.   We will exercise our own judgment and re-determine that legal issue.   *See Quick*, 7 S.W.3d at 116.

> The Supreme Court of Texas has held that the acts of parties to a contract "may breach duties in tort or contract alone or simultaneously in both.   The nature of the injury most often determines which duty or duties are breached.   When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).   This is known generally as the economic loss rule.   *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).

*Torch Energy Advisors, Inc. v. Plains Exploration & Prod. Co.*, No. 01-12-00698, 2013 WL 3095014, at *4 (Tex. App.—Houston [1st Dist.] June 20, 2013, no pet. h.); *see Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991) (holding that the economic loss rule is intended to prevent tort recovery when the loss is only economic loss that is related to the subject of a contract and because the plaintiff sought damages for breach of a duty created under contract, as opposed to a duty imposed by law, tort damages were

20

unavailable). Yet economic losses may be recovered in tort for "negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action." *Sharyland Water Supply*, 354 S.W.3d at 418–19 (footnotes omitted). In determining whether the plaintiff may recover on a tort theory when the facts of the case include a contract, it is instructive to examine the nature of the plaintiff's loss—whether the loss is the subject matter of the contract or whether the loss is distinct from the subject of the contract. *See Torch Energy Advisors,* 2013 WL 3095014, at *4; *see also DeLanney*, 809 S.W.2d at 494–95.

### 2.	Discussion

The Bank asserts that Barth's claim, although expressed as fraud, arises from an alleged extension-of-credit contract. It argues that because the only injury claimed (overpayment) is the subject matter of the supposed contract, the right of action, if any, is ordinarily on the contract alone, to which the "economic loss rule" applies. *See DeLanney*, 809 S.W.2d at 494–95; *see also Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469–70 (Tex. 1998) (setting out that "overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment"). The Bank contends that "Barth abandoned any contract claim and elected to pursue 'fraud,' a claim which is legally unsustainable." In response, Barth asserts that his claim does not arise from the subject matter of a contract. Instead, Barth argues that the Bank's fraudulent acts occurred at a time when there was no contract that the Bank could have breached and no contract to which the economic-loss rule could have applied.

21

It is undisputed that by the agreement, the Bank's predecessor, NationsBank, allowed Barth to utilize a line of credit at a specified interest rate and Barth would pay back the principal amount of the loan plus interest at the specified rate. Barth presented evidence that on August 31, 1998, via a wire transfer, he paid the outstanding balance, $52,764.93, on the line of credit. Barth's injury claimed in this suit is the amount of money he paid in response to the Bank's invoices sent to him after August 1998. Barth complains of the Bank's actions to induce him to make payments by sending him payment invoices. He claims that through the invoices, the Bank affirmatively represented to him that he owed the Bank money. Yet no such balance existed; no agreement to do so existed. The nature of Barth's injury can only be characterized as fraud, not breach of any contract. *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011) ("The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (setting out the essential elements of a breach of contract claim as follows: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach); *cf. Sw. Electric Power*, 966 S.W.2d at 469–70 (observing that overpayments under an express, valid contract can be recovered under a theory of restitution or unjust enrichment).

22

We conclude that Barth's asserted loss is distinct from the subject of any contract that existed between Barth and the Bank prior to August 1998. *See Torch Energy Advisors,* 2013 WL 3095014, at *4; *see also DeLanney*, 809 S.W.2d at 494–95. His claim is independent from promises made between the parties to a contract. *See Delanney*, 809 S.W.2d at 494. We overrule the Bank's third and sixth issues, to the extent the Bank argues that Barth's cause of action is based only on the alleged contract and, as such, the economic rule precludes his recovery.

**B.      Legal Sufficiency of the Evidence to Establish the Reliance Element of Barth's Fraud Claim**

By its third and sixth issues, the Bank specifically argues that the evidence is legally insufficient to support the jury's finding on the reliance element of Barth's fraud claim. The Bank challenges the legal sufficiency of the evidence to establish that Barth relied on the Bank's misrepresentations.

In the context of a jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if no objection is made to the charge. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005). Here, the Bank made no objections to Question 5 of the charge, which provided, in relevant part, that "[f]raud occurs when . . . the other party [Barth] acts in reliance on the misrepresentation [made by the Bank]." By its "yes" response to the question, "Did [the Bank] commit fraud against JERRY L. BARTH?," the jury impliedly found that Barth acted in reliance on the Bank's misrepresentation.

The Bank's argument in support of this legal sufficiency challenge follows in its entirety:

> Barth testified in detail about the negotiations leading up to his professed payment in August of 1998. Such admitted knowledge

23

conclusively negates any reasonable reliance on any representation, if ever there was one, by Bank of America. *See Merrill Dow Pharm. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Barth's reliance, if any, was on his "trusted" employees, not on anything Bank of America did or said. When asked whether he "read invoices and notes before payments went out," Barth conceded: ". . . I did early on in the business. But at that time there were so many—we were doing a lot of business and, no, I didn't see them all." Having confessed his lack of attention to his affairs, Barth explained his continued payments after the claimed payoff: "And the same girl in the office kept paying it because she didn't realize that it was paid off." The essential fraud element of reliance is conclusively negated; the judgment of the trial court should be reversed and judgment rendered in favor of Bank of America.

The Bank argues that the evidence established that Barth did not act in reliance on the Bank's misrepresentation, which the Bank claims is conclusively the opposite of a vital fact. *See Editorial Caballero*, 359 S.W.3d at 328 (citing *City of Keller*, 168 S.W.3d at 810; *Chapman*, 118 S.W.3d at 751); *see also Havner*, 953 S.W.2d at 711. In support of its argument, the Bank first directs this Court to evidence that Barth knew he paid off the account in August of 1998. The Bank argues that "[s]uch admitted knowledge conclusively negates any reasonable reliance on any representation, if ever there was one, by [the] Bank . . . ." Without more, we cannot conclude that because Barth knew that he paid off the account, his reliance on the Bank's representation that payments were due is conclusively negated. The Bank further asserts that the reliance element was conclusively negated because Barth's reliance was on his employees, not on anything the Bank did or said. We are not persuaded by the Bank's arguments. Instead, to the extent this evidence could be considered contrary to the verdict, we conclude that reasonable jurors could have disregarded it. *See Editorial Caballero,* 359 S.W.3d at 329.

24

The evidence at trial established that although Barth paid the money he owed to the Bank, the Bank continued to send monthly written notices requesting payment. A female employee in charge of paying on Barth's personal line of credit continued to receive the payment notices from the Bank. Without knowing that Barth had paid the balance of the debt, this employee paid the invoices, in the amount of $28,633.31. While "a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted," *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (internal quotes omitted), because of the nature of a revolving line of credit and this employee's responsibilities, the jury could have determined that the employee believed that there was a balance owed based on the payment invoices sent by the Bank. *See id.* And neither Barth nor his employee was "required to exercise diligence in discovering the falsity of the representations, and had the right to rely and act upon such statements." *Andrews v. Sullivan*, 76 S.W.3d 702, 708–09 (Tex. App.—Corpus Christi 2002, no pet.) (citing *Koral Indus. v. Security–Conn. Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990) (per curiam)). Nonetheless, the evidence shows that when Barth suspected that he might have been making payments in error, he did inquire about the payments and attempted to obtain answers from the Bank concerning them.

Reviewing the evidence presented at trial in the light most favorable to the jury's verdict and indulging every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could and disregarding the contrary evidence because the jurors could have done so, we conclude that the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See Editorial Caballero,* 359 S.W.3d at 328–29 (citing *City of Keller*, 168 S.W.3d at 827). We overrule

the Bank's third and sixth issues to the extent the issues challenge the sufficiency of the evidence to establish the reliance element of Barth's fraud claim.

## V. EXEMPLARY DAMAGES

By its fourth and sixth issues, the Bank complains of charge error and of error when the trial court failed to set aside the jury's response to the exemplary damages question. The Bank argues that error occurred because (1) the trial court's charge and the jury question on exemplary damages were incorrect in spite of the Bank's objection and tender, and (2) Barth waived any claim to exemplary damages by failing to submit a correct question after the Bank's objection.

Texas Civil Practice and Remedies Code section 41.003 provides in relevant part the following:

> (a)    Except as provided in Subsection (c) [not applicable here], exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:
>
> (1)    fraud . . . .
>
> (b)    The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (West Supp. 2011); *see id.* § 41.002 (West 2008) (providing that chapter 41 "applies to any action in which a claimant seeks damages relating to a cause of action").

The Bank objected, in relevant part, that the charge did not include the required statutory language that Barth "must prove [the elements of exemplary damages] by clear

26

and convincing evidence," which is a requirement for an exemplary damages award.[6]   It

is undisputed that the Bank tendered a substantially correct form of the question, which

the trial court refused.   Instead, the trial court submitted the following question to the jury:

> What sum of money, if any, if paid now in cash, should be assessed against [the BANK] and awarded to JERRY L. BARTH as exemplary damages, if any, for the conduct found in response to Question No. 5 [the fraud question]?
>
> "Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.
>
> a.      the nature of the wrong.
>
> b.      the character of the conduct involved.
>
> c.      the degree of culpability of [the BANK].
>
> d.      the situation and sensibilities of the parties concerned.
>
> e.      the extent to which such conduct offends a public sense of justice and propriety.
>
> f.      the net worth of [the BANK].

The jury awarded $350,000, which the trial court capped at $257,326.62.

On appeal, Barth concedes, and we agree, that it was error for the trial court to

submit an exemplary-damages question to the jury that omitted the proper standard of

proof.   *See R & R Contractors v. Torres*, 88 S.W.3d 685, 696 (Tex. App.—Corpus Christi

2002, no pet.) (setting out, in a gross negligence case that reviewed the predecessor to

---

[6] The Bank also objected to the requested charge on the basis that it did not include an instruction that the jury's answer regarding the amount of exemplary damages "must be unanimous."   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(e) (West Supp. 2011) (requiring that the following instruction be included in an exemplary-damages charge:   "You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages must be unanimous").   We note that despite the missing language, the jury's verdict was unanimous.   Nonetheless, because our analysis of the Bank's contention regarding "clear and convincing evidence" is dispositive of this issue, we need not address this objection.   *See* TEX. R. APP. P. 47.1.

section 41.002, that "[s]ubmission of a lesser standard of proof is reversible error"); *In the Interest of T.L.H.,* 630 S.W.2d 441, 446 (Tex. App.—Corpus Christi 1982, writ dism'd w.o.j.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003.   Barth, however, asks this Court to remand the issue to the trial court for a determination of exemplary damages, utilizing the proper burden of proof.   In response, the Bank argues that it is entitled to the rendering of judgment on exemplary damages because it objected to the submission and tendered a substantially correct form of the question, which the trial court refused.

> If a question omits some essential element of a ground of recovery and the element or ground is submitted to the jury over the objection of the party without the burden of proof, the objecting party is entitled to rendition of judgment in its favor, even if the jury returns a finding on the submission in favor of the party with the burden of proof.   *See* TEX. R. CIV. P. 279; *Mangum v. Turner*, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied) (citing [*State Dep't of Highways and Pub. Transp. v.] Payne,* 838 S.W.2d [235,] 241 (Tex. 1992); *McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex. 1989)). . . .   The objection or request places the burden of submitting a correct question on the party with the burden of proof, not the trial court, and the result of that party's failure to submit a correct question after objection is waiver of the ground.[ ]   *See McKinley*, 763 S.W.2d at 410; *Mangum*, 255 S.W.3d at 227.

*Enbridge Pipelines (E. Tex.), L.P. v. Gilbert Wheeler, Inc.*, 393 S.W.3d 921, 928–29 (Tex. App.—Tyler 2013, pet. filed) (op. on reh'g); *see Lee v. Lee*, No. 01-12-00117-CV, 2013 WL 4430882, at *16 (Tex. App.—Houston [1st Dist.] Aug. 20, 2013, no pet. h.) (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 598–99 (Tex. 2008) (en banc)); *Cameron County v. Velasquez,* 668 S.W.2d 776, 781 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) ("[W]here the plaintiff fails to request an issue . . . essential to plaintiffs' recovery, and the issue is not submitted, judgment must be rendered for the defendant.") (citation omitted); *see also Payne,* 838 S.W.2d at 241 (concluding that "Payne was not entitled to recover on his special defect theory as a matter of law" because he had not included an element of

28

his claim—a finding that he lacked knowledge of the culvert—in his broad-form charge and that element could not "be deemed in Payne's favor because the State objected to the omission by requesting a jury question on that issue") (citing TEX. R. CIV. P. 279; *Morris v. Holt*, 714 S.W.2d 311, 312–13 (Tex. 1986)).

As set forth above, the Bank properly objected to the charge and tendered a substantially correct form of the question requesting exemplary damages. Yet the trial court submitted the charge without the proper standard. Barth had the burden to prove the requirements of section 41.003 and to request a question that included the correct standard. After the Bank's objection, Barth failed to submit a correct question with the required standard of care, and so Barth waived that ground of relief. *See Lee*, 2013 WL 4430882, at *16; *Enbridge Pipelines*, 393 S.W.3d at 928–29; *Mangum*, 255 S.W.3d at 227; *see also Yeckel v. Abbot*, No. 03-04-00713-CV, 2009 WL 1563587, at *10–12 (Tex. App.—Austin 2009, pet. denied) (mem. op.) (explaining that the jury's answer to the punitive damages question was immaterial in the absence of chapter 41 requirements).

Because Barth did not secure an exemplary damage award based on the required standard set out in section 41.003, he was not entitled to an award of exemplary damages on his fraud claim. We sustain the Bank's fourth issue. We also sustain the Bank's sixth issue to the extent it complains that Barth waived any opportunity to obtain exemplary damages by affirmatively declining to modify his proposed jury questions and instructions.

## VI.    ATTORNEY'S FEES

By its fifth and sixth issues, the Bank complains that the trial court erred by awarding recovery of attorney's fees because there was no basis for the award. We

29

agree.

Texas law does not permit recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). We have concluded that limitations barred Barth's statutory DTPA claim, leaving him with no statutory basis for his fees. *See* TEX. BUS. & COM. CODE ANN. § 17.50. And even if a contract between Barth and the Bank authorized attorney's fees, Barth chose to abandon any contract claim he might have and elected to pursue his fraud claim. So he had no contractual basis for attorney's fees. Finally, regarding his fraud claim, Barth could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.,* 292 S.W.3d 660, 667 (Tex. 2009); *Chapa*, 212 S.W.3d at 304.

Based on our de novo review of the trial court's denial of the Bank's motion for JNOV, we conclude that the legal principles set out above prevented the trial court from entering a judgment awarding attorney's fees. *See MBM Fin. Corp.,* 292 S.W.3d at 667; *Chapa*, 212 S.W.3d at 304; *see also Quick*, 7 S.W.3d at 116; *In re Humphreys*, 880 S.W.2d at 404; *Hicks*, 348 S.W.3d at 284; *United Parcel Serv.*, 25 S.W.3d at 916 n.4. We sustain the Bank's fifth issue and its sixth issue to the extent it challenges the award of attorney's fees.

## VII.  CONCLUSION

We affirm that portion of the trial court's judgment awarding actual damages on Barth's fraud claim. We reverse that portion of the judgment awarding exemplary damages and attorney's fees and render judgment deleting these awards. And having concluded that Barth's DTPA claim is barred by the two-year statute of limitations, we also

30

reverse that portion of the judgment awarding additional damages in the amount of $85,989.93 as a result of the jury's findings that the Bank committed knowing violations of the DTPA, if the exemplary damage award is not upheld, and render judgment that Barth take nothing on his DTPA claim.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 17th
day of October, 2013.